IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHRISTOPHER MCCLINTICK, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB 05-2880 |
| MICHAEL O. LEAVITT, SECRETARY U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, | * * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This action arises out of a Complaint filed by Christopher McClintick ("Plaintiff") against Michael O. Leavitt, Secretary, U.S. Department of Health and Human Services ("Defendant"). The Complaint asserts claims for employment discrimination based on race, gender, and retaliation under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"). Currently pending before this Court is Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment. Defendant contends that the Complaint fails to allege sufficient facts to support Plaintiff's claims and, alternatively, argues that the underlying administrative record supports entering judgment as a matter of law in Defendant's favor. Plaintiff responds in part by arguing that discovery is needed to assess the strength of his claims and, accordingly, filed a Motion to Extend Time for Opposing Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment under Rule 56(f) of the Federal Rules of Civil Procedure. This Court has jurisdiction under 28 U.S.C. § 1331. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Defendant's Motion to Dismiss or, in the Alternative, for

Summary Judgment is DENIED-IN-PART and GRANTED-IN-PART and Plaintiff's Motion to Extend Time for Opposing Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment is DENIED AS MOOT.  As a result, Plaintiff's causes of action set forth in Counts II and IV under 42 U.S.C. § 1981 are DISMISSED and the case will proceed with respect to the Title VII claims set forth in Counts I and III.

## BACKGROUND AND PROCEDURAL HISTORY

In January 2001, Plaintiff Christopher McClintick, a Caucasian male, began work at the Centers for Medicare & Medicaid Services, a component of the United States Department of Health and Human Services in Baltimore, Maryland (the "Agency").  Plaintiff's job title was Health Insurance Specialist in the Division of Regulations Development Group, Office of Strategic Operations and Regulatory Affairs.  Plaintiff's duties included drafting regulations associated with legislation.  (*See*, *e.g.*, Compl. ¶ 12.)

At all relevant times, Michelle Shortt, a Caucasian female, was Plaintiff's second-line supervisor.  (Def.'s Mem. Supp. Mot. Dismiss p. 3.)  Anthony Mazarella, a Caucasian male, was Plaintiff's third-line supervisor.  (*Id.*)  Jacqueline White was Plaintiff's fourth-line supervisor.[1]  (Compl. ¶ 9.)  Until July 2004, Plaintiff's immediate supervisor was Michael Robinson, a Caucasian male.  (*Id.*; Def.'s Mem. Supp. Mot. Dismiss p. 3.)  After Mr. Robinson retired in July 2004, however, Martique Jones, an African-American female, became Plaintiff's immediate supervisor.  (Compl. ¶ 15; Def.'s Mem. Supp. Mot. Dismiss p. 3.)

In 2003, Plaintiff was nominated for a Quality Step Increase or QSI award by Mr.

---

[1]   Ms. White's racial background does not appear to be identified in the parties' papers.

Robinson.  QSIs are awards given for sustained performance of high quality that significantly exceeds an acceptable level of competence.  Unlike other awards, QSIs increase an employee's base rate of pay from one step to the next higher step of the applicable grade.  (Compl. ¶ 10.) QSIs are discretionary in nature.  *See* 5 C.F.R. § 531.504 ("A quality step increase shall not be required but *may* be granted. . . .") (emphasis added).  In order to receive a QSI at the Agency, an employee is typically nominated by his or her manager.  (*See* Compl. ¶¶ 10-18; Def.'s Mem. Supp. Mot. Dismiss p. 4.)

Plaintiff did not receive the QSI for which he was nominated in fiscal year 2003.  (*See* Am. Compl. ¶ 11.)  In March 2004, Plaintiff filed a related equal employment opportunity complaint against Ms. White and Mr. Mazzarella for discrimination based on race and gender. (*Id.* (referencing EEO Complaint # 120-2004-00539X).)  Plaintiff alleges that Ms. White and Mr. Mazzarella were "reportedly 'livid' when they learned of Plaintiff's protected EEO activity." (*Id.*)

During fiscal year 2004, Plaintiff was tasked with drafting regulations for new legislation providing prescription drug benefits to retirees:

> The rule was spawned by the Medicare Modernization Act of 2003 ("MMA"), the landmark legislation enacting the drug benefit for retirees.  The rule was an administrative priority, politically sensitive, and, according to President George Bush, "the greatest advance in health care coverage for American seniors since the founding of Medicare."  Robinson, then [Plaintiff's] first line supervisor, assigned Plaintiff to this rule because Plaintiff was, according to Robinson, the "best regulations writer" in the division.  This new and complex rule required extensive and innovative work from everyone involved and had to be developed within a very short time frame.  Robinson wanted Plaintiff to work on this rule because [he] was the only employee in his division, indeed in [the Division of Regulations Development Group], who was capable of performing this work.  Throughout 2004, [Plaintiff]

>played an instrumental role in the development and publication of
>the Title I rule.

(Compl. ¶¶ 12-14.)

Plaintiff received a number of awards for his work during fiscal year 2004.  Ms. Jones nominated Plaintiff for a $400 "on-the-spot" award that became effective on July 30, 2004.  Ms. Shortt nominated him for a $2,001 Division of Regulations Development Group award that became effective on September 20, 2004, and a $400 Administrator's Achievement Award that became effective on October 6, 2004.  Finally, Plaintiff received two "honor awards" for his performance during fiscal year 2004.  (*See* Def.'s Mem. Supp. Mot. Dismiss p. 4.)  These awards were received after Plaintiff filed his equal employment opportunity complaint in March 2004.

Plaintiff was neither nominated for nor awarded a QSI for his work during fiscal year 2004.[2]  Plaintiff alleges that he was *not* nominated for a QSI because of discrimination and retaliation:

>When Robinson retired in July, 2004, Jones, a black female, took
>over as manager of Division B.  Jones was Plaintiff's supervisor of
>record at the time the QSI nominations for fiscal year 2004 were
>submitted.  And while Jones, like everyone else in [the Division of
>Regulations Development Group], was aware of the contributions
>Plaintiff had made in ensuring that the Title I rule was developed
>and published in a timely manner, and while she was very much
>aware of the fact that Plaintiff, who had worked at a superior level
>throughout the rating period, clearly met the stated criteria to
>receive a QSI, she did not nominate Mr. McClintick for a QSI
>award.  Neither did anyone else.
>
>In past years, both White and Mazzarella have favored females,
>predominantly black females, in their awarding of QSIs.  In fact,

---

[2] Plaintiff attached to his opposition papers an affidavit from Mr. Robinson providing that Mr. Mazzarella told Mr. Robinson that Plaintiff would receive a QSI in the 2004 award cycle for his work on the Title I rule.  (*See* Pl.'s Opp. Mot. Dismiss Ex. A ¶ 15.)

> white males have rarely been selected, though nominated for the
> award by their managers.  In keeping with past practice, in 2004,
> White and Mazzarella again selected four black females and one
> white female to receive the award.
>
> At the very time [the Office of Strategic Operations and
> Regulatory Affairs] solicited and decided nominations for the 2004
> QSI award, Plaintiff's EEO claim # 120-2004-00539X was being
> litigated before the EEOC, Baltimore District Office.  With the
> exception of Jones, all those who could have nominated and/or
> selected Mr. McClintick for the QSI award, namely White,
> Mazzarella and Shortt, were implicated and called to testify in the
> case.  After cross examination of White and Mazzarella, the
> Agency decided to settle EEO Complaint # 120-2004-00539X on
> November 17, 2004.
> Plaintiff, who had been told that he was to receive a QSI for his
> work on the Title I rule, and who, based on his superior work
> performance, should have been nominated to receive the QSI
> award for fiscal year 2004, learned that he had not received a QSI
> in January, 2005 and filed Agency Complaint # 05-13-CMS.

(Compl. ¶¶ 15-18.)

On October 21, 2005, Plaintiff filed a Complaint in this Court.  On April 25, 2006, Defendant filed his Motion to Dismiss or, in the Alternative, for Summary Judgment.  (Paper No. 11.)  On May 15, 2006, Plaintiff filed his Motion to Extend Time for Opposing Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment.  (Paper No. 14.)  A scheduling order has not been issued and discovery has not commenced.

### STANDARD OF REVIEW

Defendant seeks to dismiss Plaintiff's action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "The purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999)).  The "Federal

Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Rather, Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)). Therefore, a Rule 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001); *see also Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).

## DISCUSSION

**I.    The Complaint.**

The Complaint asserts four causes of action. In Count I, Plaintiff contends that the Agency discriminated against him on the basis of race and gender in violation of Title VII by neither nominating nor awarding him a QSI. (*See* Compl. ¶¶ 23-28.) In Count II, Plaintiff maintains that the Agency discriminated against him on the basis of race in violation of 42 U.S.C. § 1981 by neither nominating nor awarding him a QSI. (*Id*. at ¶¶ 29-34.) In Count III, Plaintiff asserts that the Agency retaliated against him for participating in protected activity in violation of Title VII by refusing to nominate and select him for a QSI award. (*Id*. at ¶¶ 35-42.) In Count IV, Plaintiff contends that the Agency's allegedly retaliatory conduct also violated § 1981. (*Id*. at ¶¶ 43-51.) Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, and litigation costs and expenses in connection with these claims.

**II.     Motion to Dismiss.**

Defendant argues that Plaintiff's claims under 42 U.S.C. § 1981 must be dismissed because a federal employee can seek relief for alleged employment discrimination only by asserting causes of action under Title VII.  Defendant also contends that Plaintiff's Title VII claims should be dismissed because not being nominated for a discretionary Quality Step Increase award is not actionable under Title VII.

Plaintiff candidly acknowledges that his claims under 42 U.S.C. § 1981 lack merit.  (Pl.'s Opp. p. 25 ("Plaintiff concedes that, as a Federal Employee, his only recourse for employment discrimination is under Title VII."));  *see also Brown v. General Services Administration,* 425 U.S. 820, 825 (1976) (holding that Title VII is "the exclusive individual remedy available to a federal employee complaining of job-related racial discrimination.").  Accordingly, Defendant's Motion to Dismiss is GRANTED with respect to Plaintiff's causes of action under 42 U.S.C. § 1981 (Counts II and IV).

Before addressing whether not being nominated for a QSI is sufficient to support a claim of discrimination or retaliation, the *types* of Title VII claims at issue in this case must be distinguished.  In Count I, Plaintiff asserts that he was neither nominated nor selected for a QSI because of his race and gender.  For purposes of resolving the pending motion to dismiss, this Court notes that to establish a *prima facie* case with respect to similar discrimination claims, a plaintiff must show that (1) he is a member of a protected class, (2) that at the time of that action, he was performing his duties to the level of the employer's legitimate expectations, and (3) he suffered an adverse employment action (4) under circumstances giving rise to an inference of

discrimination.[3] *See Lettieri v. Equant Inc.*, ___ F.3d ___, ___, 2007 WL 641813, at *5 (4th Cir. 2007) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc)); *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 189 (4th Cir. 2004) (citing *Amirmokri v. Baltimore Gas & Electric Co.*, 60 F.3d 1126, 1129 (4th Cir. 1995)).

In Count III, Plaintiff contends that he was retaliated against for participating in prior equal employment opportunity activity.  A *prima facie* case of retaliation requires that the plaintiff establish that (1) he engaged in a protected activity, (2) his employer took an employment action against him that a reasonable employee would have found materially adverse, and (3) there was a causal connection between the protected activity and the adverse employment action. *See Burlington Northern & Santa Fe Ry. Co. v. White*, ___ U.S. ___, ___, 126 S. Ct. 2405, 2415 (2006); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 298 (4th Cir. 2004).

While the Defendant argues that Plaintiff's claims of discrimination fail to satisfy the three-prong test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the thrust of Defendant's Motion to Dismiss is that there was not an adverse employment action. Specifically, Defendant contends that the central allegation behind Plaintiff's Title VII claims—that Plaintiff was not nominated for a Quality Step Increase—can never support a claim

---

[3]    The precise standard to be used in establishing a *prima facie* case is flexible and depends on the particular factual situation and claim alleged. *Rowe v. Marley, Co.*, 233 F.3d 825, 829 (4th Cir. 2000); *Ennis v. National Ass'n of Business and Education Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995).  This Court is not suggesting that the standard identified above is appropriate for all claims involving a QSI.  Indeed, the parties in this case appear to disagree on the correct test, (*see* Pl.'s Opp. Mot. Dismiss p. 7), although at times both sides suggest that Plaintiff must show that "similarly situated" employees not of Plaintiff's protected class received more favorable treatment, (*see id* at p. 10; Def.'s Mem. Supp. Mot. Dismiss p. 8).

of employment discrimination or retaliation under Title VII.  *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) ("Regardless of the route a plaintiff follows in proving a Title VII action, the existence of some adverse employment action is required.") (internal citation and footnote omitted).  With respect to Plaintiff's discrimination claim, Defendant argues that:

> Because the QSI is a discretionary award in the nature of a "bonus" the failure to be nominated for a QSI cannot be said to be an "adverse employment action."  Plaintiff maintained, before and after the alleged discrimination, the same level of pay, the same position, and benefits.  This prevents Plaintiff from establishing a *prima facie* case of race [or] gender . . . discrimination.  His case should therefore be dismissed.

(Def.'s Mem. Supp. Mot. Dismiss p. 11.)  With respect to the retaliation claim, Defendant argues that:

> Plaintiff was materially unaffected by his failure to receive the QSI.  He still enjoyed the same title, benefits, salary and GS-level (13-2).  Plaintiff can point to no action on the part of the Agency which would dissuade a reasonable person from making or supporting charges of discrimination. . . . Moreover, a reasonable employee would not find the agency's decision to not nominate him for a discretionary award to be materially adverse when not one other individual in that employee's working group was nominated . . . Accordingly, even with the modified standard articulated in *Burlington*, Plaintiff fails to make a *prima facie* case of retaliation and those claims should be dismissed.

(Def.'s Supp. Mem. pp. 5-6.)

After reviewing the submissions of the parties, this Court does not find as a matter of law that the failure to be nominated for a Quality Step Increase can never constitute an adverse employment action.  While Defendant places great emphasis upon this Court's prior holding in *Schamann v. O'Keefe*, 314 F. Supp. 2d 515 (D. Md. 2004), that case is distinguishable from the

facts of this case.  In *Schamann*, this Court held that "[a]s a matter of law . . . the non-receipt of a discretionary bonus does not constitute an adverse employment action."  *Id*. at 531.  The employment action at issue here, however, is potentially more significant than the single discretionary cash award considered in *Schamann*.  Specifically, the determination of a Quality Step Increase establishes a pay scale which may remain in effect permanently unless there is a promotion.[4]  The United States Court of Appeals for the Fourth Circuit has held that an adverse employment action requires "an adverse effect on the terms, conditions, or benefits of employment."  *Von Gunten v. Maryland*, 243 F.3d 858, 866 (4th Cir. 2001) (internal quotation marks and citation omitted), *abrogated in part by Burlington*, ___ U.S. at___, 126 S. Ct. at 2415.  Under this standard, it is at least possible that a plaintiff could establish that his failure to be nominated for QSI constitutes an adverse employment action as such a determination represents a permanent pay status.  In most cases, to make such a showing a plaintiff would need to establish that he would have been awarded the QSI had he received the nomination.  Although this type of showing will be difficult to make, this Court does not find that it can never be made as a matter of law.

Furthermore, none of the courts that have considered discrimination or retaliation claims involving Quality Step Increases have concluded that such claims are *never* actionable under

---

[4] *Cf. Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a *significant* change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.") (emphasis added); *Webster v. Rumsfeld*, No. 04-1739, 2005 WL 3229753, at *7-8 (4th Cir. Dec. 1, 2005) (unpublished) (finding that plaintiff "has alleged adverse employment actions sufficient to at least pursue discovery" regarding his claims that the "changes in his job and evaluations that occurred in 2002 had a significant detrimental effect upon him because they resulted in his not being recommended for promotions and his being denied bonuses.").

Title VII. For example, the United States Court of Appeals for the Eighth Circuit considered whether a performance rating downgrade detrimentally altered the terms of employment by rendering an employee ineligible for a discretionary QSI. *See Turner v. Gonzales*, 421 F.3d 688 (8th Cir. 2005). After noting that the plaintiff "made no showing that she would have gotten the promotion absent the performance rating downgrade," the Eighth Circuit concluded that the plaintiff's "resulting ineligibility for a *discretionary* quality step salary increase does not render the performance rating downgrade an adverse employment action." *Id*. at 696 (emphasis in original).[5] *Turner* is distinguishable from this case, of course, because it focused on a downgraded performance evaluation instead of a failure to nominate. At least one court has considered a plaintiff who was nominated for, but did not receive, a QSIs. *See Robinson v. Gonzales*, No. 03-1101, 2006 WL 1102881, at *6 (D.D.C. Mar. 31, 2006) ("This Court finds that Plaintiff has established a *prima facie* case of discrimination with regard to her non-*selection* for a Quality Step Increase award.") (emphasis in original) (unpublished). Finally, at least one court has suggested that the non-nomination for QSI "encompass[es] 'ultimate employment decisions such as promoting, and compensating' and 'carr[ies] or directly portend[s] a loss of job or pay.'" *Hamblen v. Glickman*, No. 95-0411, 1996 WL 96892, at *2 (E.D. La. Mar. 4, 1996) (unpublished).

With respect to his claim for retaliation set forth in Count III, Plaintiff must show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a

---

[5] *Cf. Richetts v. Ashcroft*, No. 00-1557, 2003 WL 1212618, at *6 (S.D.N.Y. Mar. 17, 2003) (suggesting that an employee's evaluation might give rise to an adverse employment action where the evaluation renders the employee ineligible for a QSI) (unpublished).

charge of discrimination." *Burlington*, 126 S. Ct. at 2414 (internal quotation and citation omitted). Whether an action is materially adverse will, in most cases, require a fact-intensive analysis:

> We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children. A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination. Hence, a legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an act that would be immaterial in some situations is material in others.

*Id*. at 2415-16 (internal quotation marks and citations omitted).

In sum, this Court finds that Plaintiff has alleged sufficient facts surrounding his non-nomination of a Quality Step Increase for fiscal year 2004 to state a cause of action on his related claims of discrimination and retaliation. This Court is unwilling to find, moreover, that the failure to be nominated for a Quality Step Increase does not constitute an adverse employment action as a matter of law. Accordingly, Defendant's Motion to Dismiss is DENIED with respect to Plaintiff's causes of action under Title VII as set forth in Counts I and III.

**III.    Rule 56(f) Motion.**

As the Defendant has relied on matters outside the pleadings, specifically, materials from the underlying administrative proceeding, he alternatively argues that summary judgment should

be entered in his favor as there are no genuine issues of material fact. It is well-established that "summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5 (1986)). Under Rule 56(f), moreover, this Court has discretionary authority to deny a motion for summary judgment in response to the nonmoving party's request for discovery. *See* Fed. R. Civ. P. 56(f) ("[T]he court may refuse the application for judgment or may order a continuance to permit . . . discovery to be had . . . .").

In this case, Plaintiff has filed an affidavit under Rule 56(f) of the Federal Rules of Civil Procedure to support his contention that additional discovery is needed. For example, Plaintiff contends that certain facts are in the possession of Defendant. (*See* Pl.'s Mem. Supp. Mot. to Extend Time pp. 5-6 (arguing that information related to "similarly situated employees" and the competence level of Plaintiff's work during fiscal year 2004 is in Defendant's possession). Plaintiff also maintains that discovery is needed to determine whether supervisors other than his first-line supervisor Ms. Jones could have nominated him for a QSI. (*Id*. at p. 7.) Finally, Plaintiff contends that discovery is needed to dispute Defendant's contention that Plaintiff's work did not meet the standard of "sustained superior performance" that is apparently required before a QSI is awarded. (*Id*. at 6.)

Defendant responds that none of the discovery sought by Plaintiff would make a difference. For example, Defendant points out that Plaintiff was able to file an opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment that was supported by affidavits and documentary evidence. (*See* Def.'s Opp. Mot. to Extend Time pp. 2 & 5

(suggesting that Plaintiff's Rule 56(f) motion is rendered "moot" by Plaintiff's opposition to Defendant's summary judgment papers).) Defendant also contends that Plaintiff "no doubt" has access to certain documents that are relevant to his claims, (*id.* at 6), and that Plaintiff "was provided all of the documents related to nominations and selections for QSIs," (*id.* at 6-7.) These arguments are addressed, in one way or another, in Plaintiff's reply memoranda.

After reviewing the submissions of the parties, this Court finds that Plaintiff has the right to discovery in this case. It is not appropriate at this early stage in the case for this Court to resolve factual disputes by converting Defendant's motion to one for summary judgment and applying the standards set forth in Rule 56 of the Federal Rules of Civil Procedure. This Court has no way of confirming that allegedly relevant information is in Defendant's exclusive possession, or that Plaintiff has access to portions of that information. Without a complete factual record, this Court cannot conclude that Plaintiff *could have*, but *failed*, to identify similarly situated individuals who were not Caucasian and who were awarded QSIs.[6]

---

[6] Plaintiff's Motion to Extend Time requests that this Court allow Plaintiff to "extend his time for responding to defendant's Motion to Dismiss or for Summary Judgment to allow discovery. Plaintiff suggests the deadline be established by the Court's Scheduling Order." (Pl.'s Mot. to Extend Time p. 1.) These specific requests are premature, as Defendant has not answered the Complaint, and moot, in light of this Court's finding that Plaintiff has the right to discovery in this case. Accordingly, Plaintiff's Motion to Extend Time for Opposing Defendant's Motion is DENIED AS MOOT.

**CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment is DENIED-IN-PART and GRANTED-IN-PART and Plaintiff's Motion to Extend Time for Opposing Defendant's Motion is DENIED AS MOOT. Counts II and IV alleging causes of action under 42 U.S.C. § 1981 are DISMISSED and the case shall proceed with respect to the Title VII claims set forth in Counts I and III. A separate Order follows.


Dated: March 26, 2007                                /s/
                                                     Richard D. Bennett
                                                     United States District Judge